1

2

3                                UNITED STATES DISTRICT COURT

4                                     DISTRICT OF NEVADA

5                                            * * *

6    UNITED STATES OF AMERICA,                    Case No. 3:16-cr-021-MMD-WGC

7                            Plaintiff,                        ORDER

         v.

8    EDWARD PATRICK LEAHY,

9                            Defendant.

10

11   **I.      SUMMARY**

12           Defendant Edward Patrick Leahy has served approximately 84% of his sentence

13   on one count of bank robbery. (ECF No. 42 at 5.) Before the Court is his motion for

14   compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and

15   compelling reasons" presented by the COVID-19 pandemic as applied to his health and

16   particular circumstances (the "Motion"). (ECF No. 42.) The government defers to the

17   Court on whether to grant the Motion. (ECF No. 45 at 2.) Because Leahy is suffering from

18   severe mental and physical impairments, is not receiving adequate treatment at Federal

19   Correctional Institution, Phoenix ("Phoenix FCI"), and has a solid release plan—and as

20   further explained below—the Court will grant his Motion.

21   **II.     BACKGROUND**

22           On April 3, 2017, Leahy pled guilty to bank robbery in violation of 18 U.S.C. §

23   2113(a). (ECF No. 1.) In April 2016, Leahy entered a Nevada State Bank and slid a note

24   to a teller informing her that he had a weapon and demanding $400. (ECF No. 45 at 2.)

25   Leahy confessed to the bank robbery soon after. (*Id.*) On August 15, 2017, Leahy was

26   sentenced to 57 months imprisonment, running concurrently with his state sentences.

27   (ECF No. 41.)

28   ///

1    At the time he filed his Motion, Leahy's projected release date was September 13,

2    2021. (ECF No. 42 at 5.) He has thus completed 48 months of his 57-month sentence, or

3    84% of his custodial sentence. As noted, Leahy seeks release because his severe mental

4    and physical impairments are not being treated properly and make him particularly

5    vulnerable to COVID-19. (ECF No. 42.) Specifically, Leahy suffers from Hepatitis C,

6    hypertension, hyperlipidemia, chronic kidney disease, schizoaffective disorder, and

7    significant brain damage resulting from a massive hemorrhagic stroke suffered in 2016.

8    (ECF No. 42 at 25). The government does not dispute this medical history and defers to

9    the Court to decide the Motion. (ECF No. 45 at 2.)

10   **III.    LEGAL STANDARD**

11        As mentioned, Leahy seeks release under the compassionate release provision of

12   18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. (ECF No. 42 at

13   1.) This provision offers Leahy a limited exception to the general rule that the Court may

14   not modify or reduce the length of a sentence after the Court has imposed it. *See* 18

15   U.S.C. § 3582(c); *see also U.S. v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (explaining

16   that generally a court cannot modify a sentence after it has imposed it). "It allows the

17   sentencing judge to reduce a sentence based on 'extraordinary and compelling reasons'

18   after the defendant has asked the BOP [Bureau of Prisons] to bring such a motion on her

19   behalf and exhausted all administrative rights to appeal the BOP's denial of that request."

20   *U.S. v. Mogavero*, Case No. 2:15-cr-00074-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev.

21   Apr. 13, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). Moreover, before granting such a

22   request, the Court "must consider the factors in 18 U.S.C. § 3553(a) 'to the extent that

23   they are applicable,' and any sentence reduction must be 'consistent with applicable

24   policy statements issued by the Sentencing Commission.'" *Id.* (citations omitted).

25   ///

26   ///

27   ///

28   ///

1  **IV.    DISCUSSION**

2          Section 3582(c)(1)(A) implies a three-step process under which the Court must

3  evaluate compassionate release motions. That process begins with the Court determining

4  whether Leahy has satisfied the statutory prerequisites under Section 3582(c)(1)(A). The

5  Court then proceeds to evaluating whether Leahy has shown "extraordinary and

6  compelling reasons" for the Court to release him under Section 3582(c)(1)(A)(i), and then

7  considers the applicable sentencing factors under Section 3553(a). Here, the parties

8  agree that Leahy has satisfied the statutory prerequisites and demonstrated

9  "extraordinary and compelling reasons," but the government ultimately defers to the Court

10  to decide Leahy's Motion. The Court finds that Leahy's Motion should be granted and will

11  briefly address each of the three steps of the analysis.

12          **A.    Statutory Prerequisites**

13          Section 3582(c)(1)(A) requires that a defendant ask the BOP to bring a motion for

14  compassionate release on the defendant's behalf before filing such a motion with a court,

15  normally done by submitting a request to the warden. *See* 18 U.S.C. § 3582(c)(1)(A). In

16  addition, a defendant may only bring a motion under Section 3582(c)(1)(A) "after the

17  defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of

18  Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

19  receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

20  *Id.*

21          Leahy represents he has exhausted his administrative remedies because he

22  submitted a request on November 24, 2020, and more than 30 days later, the warden has

23  not responded. (ECF No. 42 at 28-29.) The government agrees that the Court may

24  entertain Leahy's request because he submitted his request more than 30 days ago. (ECF

25  No. 45 at 4.) For these reasons, the Court finds it has jurisdiction over Leahy's request,

26  and will move on to the other two steps of the analysis.

27  ///

28  ///

3

**B.    Extraordinary and Compelling Reasons**

To prevail on the "extraordinary and compelling reasons" prong of the analysis, Leahy must establish: (1) the combination of his age and underlying health conditions elevate his risk of becoming seriously ill were he to contract COVID-19 (the "Underlying Health Conditions Prong"); and (2) he faces greater risk from COVID-19 if he continues to be housed at his current facility instead of being released (the "Location Prong"). *See, e.g.*, *U.S. v Kauwe,* 467 F.Supp.3d 940, 942-43 (D. Nev. June 3, 2020).

The parties do not dispute that Leahy's medical conditions put him at a high risk of COVID-19 complications or contracting a severe case of COVID-19. Leahy argues extraordinary and compelling reasons support his request because his age and underlying medical conditions place him at high risk of contracting a severe case of COVID-19, and he is at high risk of exposure to COVID-19 because he is incarcerated at Phoenix FCI. (ECF No. 45 at 29-31.) Specifically, Leahy, a 55-year-old, suffers from Hepatitis C, hypertension, hyperlipidemia, chronic kidney disease, schizoaffective disorder, and significant brain damage resulting from a massive hemorrhagic stroke suffered in 2016. (ECF No. 42 at 25). Additionally, Leahy has a long mental health history including repeated suicide attempts and hospitalization in psychiatric wards. (*Id.*) To support his claims, Leahy introduces the statement of physician Dr. Watkins, who regularly provides care for incarcerated persons and those with COVID-19 who opines that "Leahy's medical conditions '[c]ombined with his estimated risk of acquiring Covid-19, I would estimate that his chance of dying at Phoenix FCI within the next three months is around one in twenty.'" (ECF Nos. 42 at 11, 42-2.) In response, "the government [] does not contest that Leahy satisfies the 'extraordinary and compelling circumstances' prong of the required analysis." (ECF No 45 at 4.)[1]

Turning to the location prong, Leahy argues that Phoenix FCI is experiencing a COVID-19 outbreak, placing him at greater risk. Leahy cites to Phoenix FCI's COVID-19

---

[1]Specifically, the government reviewed Leahy's medical records "which appear to show he has chronic kidney disease, a condition that puts him at an increased risk of serious illness should he contract COVID-19." (ECF No. 45 at 4.)

numbers which indicate: 142 positive inmate cases, 14 positive staff cases, 85 recovered inmates, and 21 recovered staff members. (ECF No. 42 at 30.) Furthermore, Dr. Watkins opines that the "virus is spreading like wildfire [and] Mr. Leahy is in grave danger." (*Id.*; ECF No. 42-2.) The government does not dispute Leahy's contentions that Phoenix FCI is experiencing a COVID-19 outbreak. (*See* ECF No. 45 at 4.)

The Court has reviewed the testimony of medical personnel and the medical records Leahy filed under seal with his request. (ECF Nos. 42-2, 44-1.) They confirm his representations in his briefing. The Court therefore agrees with the parties that Leahy has shown extraordinary and compelling reasons support his request because medical conditions and placement at Phoenix FCI place him at high risk of contracting a severe case of COVID-19. *See U.S. v. Wexler*, Case No. 2:12-cr-00060-MMD-VCF, 2020 WL 5517666, at *2 (D. Nev. Sept. 12, 2020) (finding that extraordinary and compelling reasons existed to grant compassionate release motion where the combination of the Defendant's age and underlying health conditions placed him at elevated risk of contracting a severe case of COVID-19).

## C.    Sentencing Factors

The Court must next consider the factors set forth in Section 3553(a) to the extent they are applicable. These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission;[2] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a)(1)-(7). As to the Section 3553(a)(2) factor, the need for a sentence must be

---

[2]Because the Sentencing Commission never released guidelines with respect to compassionate release under the FSA, Section 3553(a)(5)'s pertinent policy statement factor is neutral. *See U.S. v. Regas*, Case No. 3:91-cr-57-MMD-NA-1, 2020 WL 2926457, at *4 n.7 (D. Nev. June 3, 2020) (citation omitted).

1   sufficient, but not greater than necessary, to serve the purpose of "just punishment,

2   deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct.

3   1170, 1175 (2017) (citation and internal quotation marks omitted).

4        Leahy argues these factors favor granting his Motion for the following reasons.

5   First, he is to be released in nine months and has served approximately 84% of his

6   sentence. (ECF No. 42 at 2, 33-34.) Second, he has complex physical, psychological,

7   and intellectual deficits that require complex treatment unavailable in BOP custody. (*Id.*)

8   Third, his criminal history is connected to these significant mental health and substance

9   abuse issues. (*Id.*) Fourth, he is significantly physically weakened and impaired due to

10  his medical issues, thereby lowering any risk posed to the community. (*Id.*) Fifth, he has

11  not had disciplinary issues outside his refusal to leave the SHU. (*Id.*) Sixth, he has the

12  support and care of his brother, Timothy Leahy, a registered nurse. (*Id.*) Seventh, he has

13  a solid release plan in place and will be discharged to a Residential Reentry Center

14  ("RRC") for six months while his brother works to find a safe and stable place for him to

15  live and receive treatment. (*Id.*)

16       In response, the government briefly outlines Leahy's prior convictions—robbery

17  with use of a deadly weapon, burglary, and grand larceny—but ultimately "defers to the

18  Court's discretion whether to grant his motion." (ECF No. 45 at 5.)

19       Taken together, these factors persuade the Court that ordering Leahy's release

20  aligns with the factors in Section 3553(a). While Leahy's underlying offense and criminal

21  history are serious, the Court finds that he has demonstrated the need for complex

22  treatment that ultimately decreases the risk of recidivism and his release plan and familial

23  support sufficiently addresses the Court's need to protect the public.

24  **V.    CONCLUSION**

25       The Court notes that the parties made several arguments and cited to several

26  cases not discussed above. The Court has reviewed these arguments and cases and

27  determines that they do not warrant discussion as they do not affect the outcome of the

28  Motion before the Court.

1    It is therefore ordered that Leahy's motion for compassionate release (ECF No.

2  42) is granted.

3    It is further ordered that Leahy is compassionately released with credit for time

4  served. Leahy will be released after he has been in quarantine for a period of up to 14

5  days as the BOP deems appropriate.

6    It is further ordered that Leahy reside at and participate in the program of a

7  residential reentry center for a period of up to six months as approved and directed by the

8  probation officer.

9    It is further ordered that Leahy be placed on supervised release subject to

10  previously imposed three year term and release conditions.

11    DATED THIS 5th Day of January 2021.

12

13

14

         MIRANDA M. DU
15         CHIEF UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28